Case 24-5014, United States of America v. Euclide Aquino Urraca. Argument not to exceed 15 minutes per side, and counsel you may proceed for the appellate when ready. Good morning. Good morning, Your Honors. May it please the Court, Mary Morris for the United States. I'd like to reserve three minutes for rebuttal. I'm very pleased this is not a patent law case. This is a Fourth Amendment case that presents the question of whether reasonable suspicion existed to briefly extend a stop after an inspection of a tractor-trailer at an inspection station off the interstate. We're not challenging any fact-finding by the District Court, so this Court's review is de novo. We're asking the Court to reverse the District Court's suppression order because it relied on a couple of legal errors that caused it to discount several important facts. And before we address the legal errors, I'd like to highlight a dozen or so of the facts that went into or should have gone into the reasonable suspicion analysis. First, when Officer Jeff Fuller encountered the truck, he entered its Department of Transportation number into the database, which informed him that this trucking company was a new entrant into the market, but nonetheless that it had already accumulated a safety score of 99, which was the worst possible score, the highest it can be for any company that's allowed to operate on the road. As soon as he pulled the truck over, a third party, a driver on the interstate, pulled over to tell him that the truck had been erratically swerving from one lane to the other. Once he encountered the two drivers, the two defendants in this case, suspicions didn't go down. They instead increased as there was paperwork strewn about the cabin, and they were unable to hand over the paperwork that would usually be ready to go in a binder. Remind me when during all of this the first dog sniff. I realize the dog sniff is related to other vehicles. I think it goes around the back of this one. Is that right? It went around the driver's side. Okay. Yes. That's pretty early on as the defendants are looking for the paperwork. I see. So in the first ten minutes or so of the stop. And so the officer does go and use the dog to just check other vehicles in the area, and then comes back to the defendants who produced an incorrect bill of lading followed by another incorrect bill of lading, and eventually the co-defendant produces on his phone a picture of a bill of lading that seems to be the right one. The logbook, the electronic logbook, was not in the correct operating mode, so the trooper wasn't allowed, able to download or upload the information about the trip that these defendants had just been on. Eventually they put Trooper Fuller on the phone with someone who's purported to be the broker, the person who should be most knowledgeable about the trip and the load. That person provided no information at all. Trooper Fuller inspected the back of the truck to see the cargo, and the first pallet of cargo in the back was not labeled for the first destination, and in fact it was labeled Philadelphia, which was not a destination at all on this trip, according to the bill of lading. What do you make of, is it not disputed? I thought there was some dispute about whether Philadelphia was the destination or was actually a brand name or something. And so he just was, so it may not have been saying to going to Philadelphia, it may just have been the type of air fryer or whatever was in the back of the truck. The defendant did say that this was actually a brand as opposed to a destination. Judge Breen commented at the hearing that it looked more like a shipping label with the destination, but there's no need to sort out that factual dispute.  So it's not really disputed here. I was curious what we should do about that. So he made a finding of fact that it was? I wouldn't say it rose to the level of a finding of fact. I'm sorry to talk over you. He just commented on how it looked based on. But even if it was the case that this was just a brand name, it wouldn't be incumbent on the trooper to chase down every potential innocent explanation. It's also the case that Yuroka didn't really make that clear to the trooper as he was there, so an objective person in that situation wouldn't necessarily know about this possible innocent explanation for that particular mismatch. Required safety equipment was missing, fire extinguishers, a net on the safety bunk. Those things were absent. In addition to all those facts, there was also a clean, taped up Home Depot box under the bunk. And when asked about it, the defendants stalled, started to clean up, looked away, pretended not to hear, and had a noticeable change in demeanor with respect to the box as compared to the rest of the stop. Do you think it's just simply... So at this point, Officer Fuller testified that he clearly thought it was drugs, and that was what was discredited, so that factual finding. Do you think that is simply irrelevant, that he did not in fact think it was drugs to the probable cause inquiry? Yes, exactly. Even though one might say that he is himself an objectively reasonable officer, and his state of mind is kind of maybe evidence of what an objective officer would think. Is that theory foreclosed by Wren in the cases that say it's purely objective, or can we use it as evidence of what an objective officer might think? I think you can use it as evidence, and we did consider challenging the credibility finding and just opted not to because the standard would be higher. But even if you... Whatever one believes about Officer Fuller's subjective beliefs, it's undisputed that the box existed, clean, taped up, et cetera, and that the change in demeanor was noticeable and remarkable with respect to those two defendants. So as your question suggested, our position is that it doesn't matter at all what was in Trooper Fuller's mind because of Wren. That subjective analysis just has no place here at all. So the credibility finding is the first issue we wanted to discuss. We say it was error to discount the box and the change in demeanor based on the credibility finding because it was about a purely subjective matter that should just fall out while the objective facts remain. And on that point, I especially wanted to highlight that this seemed to be dispositive to the district court, and at its order, Record Entry 81, Page ID 204, the district court said, and I quote, if the court found the trooper's testimony regarding the box credible, Fuller would have had reasonable suspicion to prolong the seizure. Because the undersigned finds that the trooper's testimony was not believable, however, he lacked reasonable suspicion. So in other words, had the district court been willing to consider the box and the change in demeanor, it reaches a different conclusion than it did. Although at some point the district court seems to be using Officer Fuller like an expert, right, as saying it's kind of given your expertise in this area and the training that you've had on kind of looking for things, you know, through these roadways and stuff, like we're going to credit, for example, your idea that craftsman tools, right, are likely hot goods or things like that. I found it more difficult in reading the actual decision to figure, is he just crediting him as, like, his expertise as what a reasonable officer would understand? Because he's certainly in some points treating Officer Fuller like an expert. As I read the opinion, the only place where the court considered Fuller to lack credibility was that subjective piece about the box. But is he lacking credibility as an expert or is he lacking credibility just like as, you know, what he thought as an individual officer as he was looking? Just as to what he thought. And the reason I think that is, as the court explains, it's credibility finding. The reason it doubts credibility is the actions of Fuller with respect to the box. Because if the dog alerts, he goes somewhere else instead of going right back to the box. So I think that it really was limited to that piece. There's nothing else where the court says or suggests that Officer Fuller was not credible. And I think you're right that the rest of the opinion, you know, it's all backed up by the video. So most of the objective facts are there for anyone to see. But he does reference training and experience in a variety of ways. He mentions that he was the supervisor of the interdiction unit and so forth. So I think the credibility determination is really limited to that one small piece, which turned out to be a big piece when the court declared it dispositive to allow the box and the change in demeanor to fall out. So that subjective piece is really the first legal error. And we've identified two. I think that if the court agrees with this on either one of the two, that's enough to establish reasonable suspicion. In other words, if the court considers the box and demeanor, that's enough based on what the district court said about it basically being dispositive. And then the other ten facts, too. Even if you take out the box and look at those, there's reasonable suspicion because it is a low bar that doesn't require anything more than particular objective facts, leading up to a moderate chance of finding illegal activity. Can I ask kind of an unrelated question, but I was curious from watching the video and reading your brief. As I understand, what would have happened without the dog sniff around the truck is that Officer Fuller would have issued a sanction for all the safety violations and the truck would have stayed there for ten hours? Exactly right, Your Honor. So either this is an inevitable discovery exception to the exclusionary rule maybe, but like Rodriguez says, it's inappropriate to detain somebody for longer once your purpose is done. But the truck was going to be detained for ten hours at that spot. So why wouldn't you just say more naturally that the dog sniff didn't delay the stop because the stop would have lasted for ten hours? We thought about that and we think the record probably does support an inevitable discovery kind of reversal, I guess. I think that the truck was detained. I don't know that the people were detained for the ten hours. But certainly it goes into the practical reality of how the scope and duration of this extension was really next to nothing because the truck was going to stay there. Had he simply handed the report and then walked the dog, there's no question this would have been perfectly constitutional. So if he had stopped him on the side of the road, would the truck have stayed on the freeway for ten hours? Or does the law say that you just take it to the most immediate rest stop? I am speculating a little bit here, but I would assume that the truck would need to be at an inspection station, and that's where they were. They were already at an inspection station in this particular case. And just to briefly hit our second point, the court engaged in a divide-and-conquer sort of analysis here. It ruled out the first ten or so facts as being related only to potential cargo theft as opposed to drug trafficking. Our position is that Winters cautions against such a narrow view. The kind of facts here tended to show that these people were nervous around officers, that they had something to hide, that they were probably trafficking something illegal, whether it be drugs or stolen goods or something else. So the district court was requiring too narrow a fit, I think, between the objective facts giving rise to reasonable suspicion and the kind of investigation that was allowed. Your argument is that seeing the craftsman tools or the kind of arguable discrepancies between where the shipping labels are going and where they're supposedly transporting things gives rise to reasonable suspicion for drugs. Especially just the large number of inconsistencies and the poor safety score and the inability to talk to a broker, all these things were kind of suggesting that something's going on other than a legitimate trucking enterprise. The craftsman tools, probably my least favorite fact out of those ten because that one really does go to the theft, but the others are nicely analogous to those that you see in Williams and Winters, inconsistent travel plans and nervousness, changing to meet, all those sorts of things. The level of generality in Winters is suspicion of illicit activity such as trafficking contraband, and I think that's the right level of generality for this. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Lloyd Tatum from Henderson, Tennessee, representing the athlete. I listened attentively. I didn't get all of it. I'm losing my higher frequency hearing, but I heard you talk about the Philadelphia word. The testimony by the defendant at the hearing in this case, at the very end, his testimony is completely omitted by the appellant in the brief, but he does explain that Philadelphia is a brand name. I think he explained it was a sushi plate. I'm not sure about the sushi plate, but it was a brand name, not a destination. Remind us, is there a finding on this point from the district court judge? No, there's not. Okay. And Judge Bloomkatz, to your point about Fuller being treated as an expert, my theory of this case is that Trooper Fuller wanted to use that canine as soon as this tractor-trailer got pulled over, and he tried to at the very first of the stop and brought him around to the driver's side. No hit. Didn't complete taking him to the passenger's side because that door was open and he was afraid the passenger might react adversely to, you know, might be afraid of the dog. Some people were afraid of the dog. So maybe that explains why he was thinking it wasn't drugs. It wasn't a hit. It was on the driver's side. Why would, well, that doesn't add to suspicion of drugs when your dog doesn't hit the first time. What's your take on, I mean, the kind of point of law here is whether you can rely on the . . . the district court can rely on the officer's subjective views to exactly what's there. And, you know, just as you would say, we wouldn't . . . I mean, it might be relevant that an experienced officer says, I think there'll be drugs there, or an experienced officer says, I don't think there'll be drugs there. You would say in both settings it's not dispositive, right? Right. In this case, we have an experienced officer, Trooper Fuller, who mouths one thing but whose behavior says the exact opposite. At the hearing, he testifies, and I knew exactly then that that was going to be drugs, words to that effect. But his behavior on the body cam is, okay, now we look over here, and he doesn't pay much attention to it at all. And . . . But what's your response for the notion that his subjective intent just doesn't matter? Or it's a data point, but it's only a data point. Well, the Williams case I cited in the brief says it's something the district judge should take into consideration, take into account. What do you think this district court judge did? Well, I think this court . . . Is that a reason really appealing on that ground? I think the court thought this officer wanted to use that canine, and he was going to use the canine one way or the other. He did it once. He didn't complete it. He wanted to go back and do it a second time. And if he finds drugs, we'll justify it somehow. And if he doesn't, well, there's no case. That explains the trooper's behavior. Maybe the trooper just had a hunch. Maybe he had the hunch when he pulled in behind the tractor-trailer before he even started his inspection. I don't know when the hunch originated, where it originated. But the district court had reason to find what it found. Why isn't the divide-and-conquer argument pretty powerful here? It seems to me the notion that the officer knew it seemed to be a fly-by-the-night company with lots of violations, that could suggest, yeah, maybe they have stolen property in the back, or maybe they're just a front for a drug organization, and they created the license and created this front to transport drugs. So it seems to me that the district judge was quite mistaken to break it down into, this evidence is only supporting theft of certain goods in the back and not potentially supporting the notion that this was a drug transportation ring. Well, the district court saw those kinds of issues as separate because they are separate. One case says you don't investigate, you don't administer a field sobriety test to somebody that you're suspecting of securities fraud. I agree with your point, but why isn't the fact that it seemed to be maybe a pretextual company, that they had all these mishaps, why wouldn't that at least under the reasonable probability test suggest that maybe it really is a pretext for something illegitimate? And it seems to me what could have been illegitimate is that you're actually transporting drugs. Well, does the record support that? Does Trooper Fuller say, oh, people who engage in cargo theft also engage in drug delivery? But you can do both. I mean, to use your example, the officer stops someone for suspected DUI, and the driver says, but I'm a securities guy, you can only arrest me for securities fraud. That's absurd. You can do securities fraud and you can do DUI, and as Judge Murphy's pointing out, it's not crazy to say in this setting an officer could be wondering, there's something fishy going on here. It might be drugs, it might be illegal shipment of X, Y, or Z, but there's just too much going on here. They don't have to spell it out. I mean... Well, I think a dog sniff has to relate to drugs, not to cargo theft. The point is they don't know. They know there's something amiss here, or they have reasonable suspicion something's amiss here. One possibility is drugs, one possibility is shipping things they shouldn't be shipping that aren't contraband. Well, all we have is a taped box. That's all we have. I mean, there's nothing in the cargo area that makes one suspicious of drug activity, and in the cabin area we've got this taped box that these drivers don't speak the language well, and yes, one might characterize them as stalling. The trial court found that they were somewhat mitigated by their problems with the language, and that, quote, suspicion was mitigated by their problems with the language. But to your point, cargo theft doesn't give the trooper authority to use a dog sniff to extend the search by that small amount of time, but it's an unconstitutional amount of time. Well, I mean, maybe a way of putting your point is you should win if the suspicions only go in the direction of cargo theft, if that's the only direction they go, you should win. But I think the problem here is I don't think that's the only direction these clues go. Well, we have a taped box under the bunk. That doesn't seem like cargo theft. Trooper Fuller says at the hearing, oh, that's a big deal, but his behavior at the time on the body cam, it's not a big deal. If Trooper Fuller doesn't think it's a big deal, why should the district court? That's going back to the subjective point. That's really putting a big premium on that. You don't want this to go the other way. Just because he's got all these convictions, it's something, but he hasn't really pointed to objective facts. We would never let that testimony drive the inquiry. But on the other hand, we have a very experienced officer, very trained, who apparently doesn't think there's anything out of the normal with this taped box, with his behavior, not what he says at the hearing. How about when the taped box is moved? And one of them was moved. He only discovered that after the inspection was over. His time was out. The inspection was over. So that doesn't count. Did you think about, so this is kind of an oddball question, but when I watched the video, I saw the dog repeatedly jump on the truck with its hind legs. Is there any argument that, yes, a dog sniff is not a search, but under Jones, could that be considered a trespass when the dog actually contacts the vehicle? It absolutely could, yes. You didn't argue that, but I guess it's an open question when a drug sniff can become a search if the drug dog is trespassing on somebody else's property. Correct. All right. Well, there's no obligation to go 15 minutes. Can I ask one just very technical question? I'm sorry, I forgot. Can you inform us how does your client use his last name? Is he Aquino, is he Uraka, or does he use both last names? Uraka. Thank you. I hope it's warmed up outside. All right, thanks very much. Ms. Morris. Thank you. Just briefly, to respond to the idea that Trooper Fuller was intent on using the dog, that's not problematic. There's nothing wrong with using the drug sniffing dog in the public area as they were, so I just wanted to briefly respond to that. What about the fact that he jumped up? Is that an open question? Has any court actually considered if a dog is trespassing? I mean, Jones was just a GPS monitor that you put on the car, so it seems to be setting the rule that any touching of the car is a trespass. I'm not aware of case law. Judge Murphy, you have a dog. Do you have any idea how many trespass violations that dog has committed? My dog is not a police dog. My dog is not a police dog. But if it's trespass, it's trespass. Oh, my gosh, we're in trouble. It is an interesting question. I think it would be waived at this point if the defendant were to try to raise it. If the court has no further questions, I'll conclude there and ask this court to reverse. Thanks to both of you for your helpful briefs and arguments. I'm very grateful. The case will be submitted.